## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

176 RAGLAND EAT, LLC, et al.,

                Plaintiffs,

v.                             CIVIL ACTION NO.   5:23-cv-00339

DDP ROOFING SERVICES, INC.,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant DDP Roofing Services, Inc.'s motion to dismiss. (ECF No. 7.)   For the reasons more fully explained below, the motion is **DENIED**.

### I.   BACKGROUND

This matter arises from a structural fire in Beckley, West Virginia.   Plaintiff 176 Ragland EAT, LLC, ("Plaintiff 176 Ragland") is a Nevada limited liability company.[1]   (ECF No. 36 at 3, ¶ 4.)   Plaintiff U-Haul Co. of West Virginia ("Plaintiff UHWV") is a West Virginia corporation with its principal place of business in West Virginia.   (*Id.* at 3, ¶ 5.)   These two parties are affiliated, (*id.* at 3, ¶ 1), and the Court refers to them collectively as "Plaintiffs."   Defendant DDP Roofing Services, Inc. ("Defendant") is a Pennsylvania corporation with its principal place of business in Pennsylvania.   (*Id.* at 3, ¶ 6.)

---

[1] Plaintiff 176 Ragland's sole member is AREC 1031 Holdings, LLC, which itself is a Nevada limited liability company, whose sole member is Amerco Real Estate Company, a Nevada corporation with its principal place of business in Arizona.   (ECF No. 36 at 3, ¶ 4.)

A.  Facts

At all times relevant herein, Plaintiff 176 Ragland owned the now-burnt building and the property upon which it sat.  (*See* ECF No. 36 at 3, ¶ 1.)  Plaintiff UHWV leased that building, put it to commercial use, and "generate[d] income from" it.  (*Id.* at 3, ¶ 2.)

Sometime in early- or mid-2021, the building's roof needed replaced.  (ECF No. 36 at 4, ¶ 13; *see also* ECF No. 8-1 at 3.)  Plaintiff UHWV hired Defendant for the job.  (ECF No. 36 at 4, ¶ 13.)  The two parties agreed on the terms of the deal and memorialized them in an 18-page written contact.[2]  (*See generally* ECF No. 8-1.)  This contract imposed a laundry list of responsibilities on Defendant, two of which are relevant here.  First, Defendant had to finish replacing the roof by November 30, 2021.  (*Id.* at 3.)  Second, while working on the roof, Defendant had to "take all reasonable safety precautions . . . to protect and safeguard . . . [a]ny and all . . . property at the site."  (*Id.* at 7.)

Defendant began work that summer and replaced the roof piecemeal.  (ECF No. 36 at 5, ¶¶ 18–19.)  So rather than removing the old roof first, and then replacing it with the new roof, Defendant went section-by-section.  (*Id.*)  That meant scraps from the old roof and materials for the new roof—both of which were flammable—were on the roof where Defendant's employees worked.  (*Id.* at 5–6, ¶¶ 20–22.)  When doing all this work, Defendant's employees used a variety of power tools, including grinders, a chop saw, and gasoline-powered generators.  (*Id.* at 6–7, ¶¶ 23–26.)

---

[2] The complaint did not include a copy of the contract, but the Court can nevertheless consider the contract in ruling on the motion because it is "integral to the complaint and there is no dispute about [its] authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822, F3d 159, 166 (4th Cir. 2016).

Defendant's work continued into the fall.  Then, on November 17, 2021, less than two weeks before Defendant's deadline, a fire broke out on the roof.  (*Id.* at 7, ¶¶ 31–32.)  Plaintiffs allege the fire started because one of Defendant's employees, while using a power tool, threw sparks onto some flammable roofing materials.  (*Id.* at 8, ¶ 34.)  Plaintiffs further allege the fire spread across the roof and soon engulfed the building.  (*Id.* at 8, ¶ 35.)  The fire was able to engulf the building, Plaintiffs allege, because Defendant did not have enough fire extinguishers on hand, nor did Defendant develop a fire prevention plan or ensure compliance with the fire code.  (*Id.* at 7, ¶¶ 29–30.)  Defendant's employees, a dozen or so in all, escaped unharmed.  (*Id.* at 8, ¶ ¶ 33, 39.)  The building, though, was a total loss.  (*Id.* at 9, ¶ 41.)

B.  Procedural History

On April 18, 2023, Plaintiff UHWV and then-Plaintiff Amerco Real Estate Company ("Amerco") filed suit in this Court, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.  (ECF No. 1.)  They sued Defendant only and brought three claims.  (*Id.*)  Count I asserted a claim for breach of contract because Defendant allegedly did not (1) complete the roof replacement by the agreed upon date or (2) protect the property.  (*Id.* at 10–11, ¶¶ 49–63.)  Count II asserted a negligence claim, alleging that Defendant's employees' carelessness caused the fire that burned the building.  (*Id.* at 11–12, ¶¶ 64–69.)  Count III, titled "*Res Ipsa Locquitor* [sic]," asserted a second negligence claim and sought to invoke the doctrine of *res ipsa loquitor* to establish that Defendant's employees negligently caused the fire.  (*Id.* at 13, ¶ 70–74.)  In their prayer for relief, the two sought compensatory and punitive damages, attorneys' fees, and pre-and post-judgment interest.  (*Id.* at 13, ¶ 75.)

The complaint also included an "Introduction" section.   This section, which spanned only a page-and-a-half, began on Page 1 and ended on Page 2.   (ECF No. 1 at 1–2.)   It consisted of five unnumbered paragraphs, ranging from three to seven lines each, that briefly summarized the allegations contained in the complaint's six-page "Facts" section.   (*Id.*)   The Introduction did not contain any allegations different from those found later in the complaint; it only condensed them into a concise narrative.   (*Id.*)

On May 12, 2023, Defendant filed a partial motion to dismiss, through which Defendant seeks a variety of relief.   (ECF No. 7.)   First, Defendant asks that Counts II and III be dismissed, claiming that West Virginia's gist-of-the-action doctrine bars those claims.   (ECF No. 8 at 5–7.)   Second, and alternatively, Defendant wants Count III dismissed because "res ipsa loquitur does not constitute [an] independent cause of action."   (*Id.* at 7–8.)   Third, Defendant asks the Court to dismiss the request for punitive damages since contract and simple negligence claims never carry that kind of relief.   (*Id.* at 8–11.)   Fourth, and finally, Defendant wants the Court to either order Plaintiffs to replead the unnumbered Introduction or strike it altogether.   (*Id.* at 11–13.)   Plaintiff UHWV and Amerco filed a joint response in opposition, (ECF No. 11), to which Defendant replied, (ECF No. 12).

Then, on October 31, 2023, while the motion to dismiss was pending, Plaintiff UHWV and Amerco moved to substitute parties.   (ECF No. 29.)   They sought to replace Amerco with Plaintiff 176 Ragland, as Amerco was incorrectly included in this case on the mistaken belief that it owned the property when Plaintiff 176 Ragland—a subsidiary—was the true owner.   (*Id.*)   Defendant did not oppose the motion.[3]   (*Id.*)   The Court granted the motion to substitute on

---

[3] This case was also reassigned from the Honorable Frank W. Volk to the Undersigned on November 7, 2023.   (ECF No. 31.)

December 7, 2023, dismissed Amerco from the case, and added Plaintiff 176 Ragland as a plaintiff. (ECF No. 35.)   Plaintiffs filed their amended complaint that same day, which is no different from the original complaint, save the substituted party.   (ECF No. 36.)

Now, with the motion to dismiss fully briefed and the proper parties before the Court, the matter is ripe for adjudication.

## II.   *LEGAL STANDARD*

Federal Rule of Civil Procedure 8(a) lays out the pleading requirements for federal court.   Rule 8(a)(2) requires that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Rule 8(a)(3) also requires that the complaint contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are

5

required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.   DISCUSSION

Defendant's motion raises several questions.   First, does West Virginia's gist-of-the-action doctrine bar Plaintiffs' negligence claims?   Second, and if not, can Plaintiffs separately plead a negligence claim predicated on *res ipsa loqitour*?   Third, are punitive damage requests found in the prayer for relief subject to a motion to dismiss?   Fourth, and finally, what to do about Plaintiffs' unnumbered, five-paragraph Introduction in the amended complaint?   The Court answers each in turn.

### A.   West Virginia's gist-of-the-action doctrine does not bar Plaintiffs' negligence claims

West Virginia's gist-of-the-action doctrine prevents plaintiffs from "recasting . . . a contract claim as a tort claim."   *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013) (per curiam).   To that end, the doctrine bars tort claims where any of the following four factors exists:

(1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 982 (4th Cir. 2015) (quoting *Gaddy Eng'g Co.*, 746 S.E.2d at 577).   In other words, tort claims can co-exist alongside contract claims only where the defendant breached "some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere . . . contract[ual] obligation."   Syl. Pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619 (W. Va. 2002); *see also Dan Ryan Builders*, 783 F.3d at 980 ("The 'gist of the action' doctrine requires plaintiffs seeking relief in tort to identify a non-contractual duty breached by the alleged tortfeasor.").   Whether a plaintiff is owed a duty is a question this Court decides as a matter of law.   Syl. Pt. 5, *Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000) ("The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.").

Defendant here argues that Plaintiffs are "improperly recast[ing] a breach of contract claim as tort claims."   (ECF No. 8 at 5.)   Specifically, Defendant says that "Counts II and III exclusively arise from the subject matter of the parties' Contract" and "every single allegation of negligent and/or tortious conduct is derived from or controlled by the Contract."   (ECF No. 8 at 6.)   Put in plain English, Defendant claims that the duty to protect Plaintiffs' property was a creature of contract, which the parties themselves created, and was not imposed by any independent legal obligation.   (ECF No. 12 at 5.)

The West Virginia Supreme Court, however, has long recognized an independent duty—sounding in tort—to prevent and mitigate accidental fires that threaten someone else's property. *See, e.g.*, Syl. Pt. 3, *State ex rel. Catron v. Sims*, 57 S.E.2d 465 (W. Va. 1950) ("One setting fire upon his premises is charged with the duty of exercising ordinary care and skill in preventing it

from spreading and being communicated to the property of another, and if he fails to exercise such care, and by reason thereof the fire is communicated to the property of another, causing him damage, he is liable for the damages sustained by reason thereof."); Syl. Pt. 1, *Orander v. Stafford*, 127 S.E. 330 (W. Va. 1925) ("[W]here an accidental fire starts on one's premises, he is not liable for the damage thereby to his neighbor, unless it started through his negligence, or he failed to use ordinary care and skill to extinguish it, or failed to provide adequate means for doing so."); *Keyser Canning Co. v. Klots Throwing Co.*, 118 S.E 521, 526 (W. Va. 1923) (recognizing a neighboring property owner's "duty to guard against danger from fire").

To be sure, this tort duty seemingly mirrors Defendant's contractual duty "to protect and safeguard . . . [a]ny and all [of Plaintiffs'] property at the site."   (ECF No. 8-1 at 7.)   Critically, though, this tort duty exists entirely independent of the parties' contractual relationship, *Keyser Canning Co.*, 118 S.E. at 526, so Plaintiffs' "tort [claims] . . . arise independent . . . of the [parties'] contract."   *Lockhart*, 567 S.E.2d at 624; *see also Tri-State Petroleum Corp. v. Coyne*, 814 S.E.2d 205, 218 (W. Va. 2018).   As a result, the Court finds that Counts II and III arise under an "a[n] [independent,] non-contractual duty" that Defendant allegedly breached, *Dan Ryan Builders*, 783 F.3d at 980, and West Virginia' gist-of-the-action doctrine does not bar these negligence claims.

B.  Plaintiffs can plead a separate negligence claim for *res ipsa loquitor*

Defendant next tries to defeat Count III by arguing that *res ipsa loquitor* is not an "independent cause of action."   (ECF No. 8 at 7–8.)   While true, the Court is still unpersuaded that the Federal Rules of Civil Procedure prohibit Plaintiffs from bringing a second negligence claim premised on *res ipsa loquitor*.

Some background on West Virginia negligence law is in order before getting into the nitty-gritty of the federal pleading standards.    In West Virginia, a plaintiff bringing a negligence claim must prove the defendant (1) owed him a duty, (2) breached that duty, and (3) that breach proximately caused his injuries.    *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)). Plaintiffs typically establish a breach by showing that the defendant failed to conduct himself as a person of ordinary prudence.    *See* Syl. Pt. 3, *Sewell v. Gregory*, 371 S.E.2d 82 (W. Va. 1988). But there is more than one way to allege breach.    Sometimes the circumstances surrounding an incident leave but one inference: the defendant must have breached the duty of care, otherwise the incident would not have happened.    Syl. Pt. 2, *Farley v. Meadows*, 404 S.E.2d 537 (W. Va. 1991) ("The doctrine [of *res ipsa loquitor*] applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances.").    On those rare occasions,[4] plaintiffs can rely on this circumstantial evidence to show that the defendant breached the duty of care.    *See* Syl. Pt. 4, *Kyle v. Dana Transp., Inc.*, 649 S.E.2d 287 (W. Va. 2007).

Now for the finer points of pleading.    When determining whether a plaintiff has pled a plausible claim for relief, the Court must construe the claim "so as to do justice."    *Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022) (quoting Fed. R. Civ. P. 8(e)).    This requires the Court to look beyond the label splashed above the claim and "focus on the substance of the allegations," lest "pleading [once again become] a formalistic headache."    *Id.* (disclaiming any "special

---

[4] The West Virginia Supreme Court has held that the doctrine of *res ipsa loquitor* can be invoked only when "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence, and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."    Syl. Pt. 3, *Crum v. Equity Inns, Inc.*, 685 S.E.2d 219 (W. Va. 2009) (per curiam).

heading" or "magic words" requirement under the Federal Rules); *see also Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether [a claim] fails to meet th[e] [Federal Rules'] extremely modest [pleading] standard."). The name of the game at the pleading stage is simply to put the defendant on notice; the plaintiffs need not prove their case at this early juncture. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014).

Count III does exactly that. After reincorporating and realleging the paragraphs preceding Count III—which alleged Defendant's duty and Plaintiffs' damages—Plaintiffs laid out their alternative theory of breach. They alleged (1) that the fire would not have happened but for someone's negligence, (2) that Defendant's employees were the only people on the roof (where the fire started), and (3) that the only reasonable inference to draw from these facts is that Defendant's employees breached their duty and caused the fire. (ECF No. 36 at 13, ¶¶ 70–74.) These allegations suffice to state a negligence claim under West Virginia law and thus adequately put Defendant on notice of the claim levied against it. *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022).

Defendant's position—that the Court should dismiss Count III solely because Plaintiffs placed an improper label on it—runs counter to Fourth Circuit precedent. Simply put, Defendant asks this Court to exalt form over substance and dismiss an otherwise sufficiently pled claim. The Fourth Circuit, however, has cautioned against doing so, and instructed district courts and litigants alike to not fret or fuss over minor "legal misstatements" found in a cause of action. *See, e.g.*, *Stanton*, 25 F.4th at 237–38 ("The Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" (quoting

*Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014))); *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014) (holding that plaintiffs are "not required to use any precise or magical words in their pleading[s]").   Plaintiffs may have mistakenly labeled Count III "*Res Ipsa Loquitor* [sic]" when West Virginia law recognizes no such stand-alone claim (because it's only an evidentiary principle), but the factual allegations contained in the Count—which are what really matter here—still state a viable negligence claim.   *Cf. Rogers v. Tarbox*, 668 F. Supp. 3d 478, 484 (S.D. W. Va. 2023) (denying a motion to dismiss a claim labeled "*prima facie* negligence" because, although improperly labeled, it sufficiently stated "a garden variety negligence claim").   The Court thus declines Defendant's invitation to adopt a hypertechnical pleading standard and will instead allow Count III to proceed to discovery.

   C.   Punitive damage requests are not subject to a Rule 12(b)(6) motion

   Defendant next attacks Plaintiffs' request for punitive damages.   Defendant says the Court should dismiss the punitive damage request because, on Defendant's telling, punitive damages are unavailable here as a matter of law.   (ECF No. 8 at 7–8.)   The Court cannot to do so, though, because Plaintiffs' punitive damage request is found in the amended complaint's prayer for relief and therefore cannot be attacked via Rule 12(b)(6) motion.   *Gillespie v. Elsner*, No. 2:22-cv-00322, 2022 WL 11913178, at *3 (S.D. W. Va. Oct. 20, 2022).   As this Court recently explained, "Rule 8(a)(2) requires [a] [p]laintiff to plead 'a short and plain statement of [her] claim' for relief." *Rogers*, 668 F. Supp. 3d at 484 (third alteration in original).   "Rule 12(b)(6), in turn, allows the Court to test whether [the plaintiff] has pled a viable claim" under Rule 8(a)(2).   *Id.*   Importantly, a "plaintiff's claims are distinct from the remedies" sought, with the latter "fall[ing] within the scope of Rule 8(a)(3)," not Rule 8(a)(2).   *Gillespie*, 2022 WL 11913178, at *3.   Because

"the Rule 12(b)(6) inquiry is cabined to [a] [p]laintiff's claims under Rule 8(a)(2)," it cannot be used to attack allegedly unavailable relief sought under Rule 8(a)(3).   *Rogers*, 668 F. Supp. 3d at 485; *see also Bennett v. Bardon*, No. 2:22-cv-00453, 2023 WL 364112, at 2–3. (S.D. W. Va. Jan. 23, 2023).   Defendant offers no persuasive reasoning to part from this Court's prior opinions expressing this view, so the Court declines to do so today.

D.  Plaintiffs' brief unnumbered "Introduction" does not require repleading or dismissal

Defendant also wants the Court to dismiss or order repleading of Plaintiffs' Introduction at the beginning of the amended complaint.

Rule 10(b) of the Federal Rules of Civil Procedure requires a party's pleadings to "state [each] claim[] or defense[] in numbered paragraphs, each limited as far as practicable to a single set of circumstances."   However, because Rule 10(b) is only intended to promote simplicity and clarity in pleadings, not every technical violation needs correcting.   *Hook v. Regents of Univ. of Cal.*, No. 05-cv-356, 2005 WL 8156511, at *2 (D.N.M. Oct. 11, 2005).   Courts thus let technical violations slide and require corrective action only when "the existing form of the pleading is prejudicial or renders the framing of an appropriate response extremely difficult."   *Id.*; *see also Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co.*, 301 F. Supp. 479, 481 (S.D.N.Y. 1969) ("Pleadings should not be dismissed or ordered amended unless the allegations therein are not sufficiently particular to give notice of the matter in controversy or unless the form thereof is instinct with demonstrable prejudice.").

The parties here agree that Plaintiffs' Introduction is a technical violation of Rule 10(b). (ECF No. 8 at 11–13; ECF No. 11 at 18–20.)   They part company, though, on the issue of prejudice.   Plaintiffs say the Introduction does nothing more than prime the reader for the

amended complaint's allegations and thus adds clarity to the case.   (ECF No. 11 at 19.)
Defendant, meanwhile, contends that "the lack of numbered paragraphs . . . deprives [Defendant
of] a point of reference for responding, thereby making an appropriate response impracticable."
(ECF No. 12 at 10.)

Defendant's grievances are overblown.   The Introduction is less than two pages long and
is divided into five short paragraphs.   Each paragraph has its own theme, and together they
summarize how the fire started, why Defendant is at fault, and how Plaintiffs have been harmed
(allegedly, of course).   The Court sees no reason why Defendant cannot easily identify which
paragraph it is responding to, admit the few facts it must, and then deny all remaining allegations
contained in that paragraph.   *See Shaw v. Russell Trucking Line, Inc.*, 542 F. Supp. 776, 781 (W.D.
Pa. 1982) (denying a motion to strike a preliminary statement where the statement "was
sufficiently clear so as to enable each Defendant to effectively formulate a response"); *see also
Coleman v. Camacho*, No. 10-2613, 2012 WL 5986455, at *3 (D.N.J. Nov. 27, 2012) (finding that
a page and a half long, unnumbered, single-paragraph complaint "contain[ed] enough information
and [was] sufficiently clear enough to permit response").

Indeed, the technical violation here is worlds apart from the egregious sort that requires a
court's attention.   *Owens v. Fla. Dep't of Revenue*, No. 22-10550, 2023 WL 4105378, at *2 (11th
Cir. June 21, 2023) (complaint "consist[ing] of 20 pages of long strings of conclusory sentences
and lengthy, unnumbered paragraphs that fail to show any connection to a particular claim or cause
of action"); *Davis v. Anderson*, No. 17-1732, 718 F. App'x 420, 423 (7th Cir. 2017) (165-page
complaint that contained an 83 page "preliminary statement," which had many unnumbered
paragraphs that "cover[ed] multiple unrelated and often incoherent topics"); *White v. Homer*

*Laughlin China Co.* No. 5:18-cv-151, 2019 WL 3806631, at *2 (N.D. W. Va. Aug. 13, 2019) (14-page handwritten complaint that was "not separated into discernable paragraphs").

Because Defendant cannot demonstrate any real prejudice in having to admit or deny allegations found in five paragraphs in the first two pages of the amended complaint, the Court will not make Plaintiffs correct their technical violation of Rule 10(b).

*IV.    CONCLUSION*

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**.   (ECF No. 7.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 29, 2024

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

14
